## IRVING BERLIN, Inc., v. DAIGLE.

District Court, E. D. Louisiana, Baton Rouge Division. May 4, 1928.

No. 138.

1. Copyrights ⊕⇒77—That defendant controlled and operated place of public entertainment for profit established liability for permitting unlicensed use of plaintiff's musical compositions on premises (Rev. St. § 4965; Copyright Act, § 25[b]; 17 USCA § 25[b]).

Fact that defendant operated and controlled place of public entertainment, charging admission and so operating for profit, establishes his liability for permitting and authorizing unlicensed use of plaintiff's musical compositions in and on premises under Rev. St. § 4965, and Copyright Act, § 25(b), 17 USCA § 25(b).

2. Copyrights ⊕⇒87—Plaintiff held entitled to only $10 for unlicensed use of each of plaintiff's popular musical compositions (Rev. St. § 4965; Copyright Act, § 25[b], par. 4; 17 USCA § 25[b], par. 4).

Plaintiff held entitled, under Rev. St. § 4965, and Copyright Act, § 25(b), par. 4, 17 USCA § 25(b), par. 4, to no more than $10 for unlicensed use of each of plaintiff's popular musical compositions.

In Equity. Copyright infringement suit by Irving Berlin, Inc., against A. Daigle. Decree for plaintiff.

J. Studebaker Lucas, of New Orleans, La., for plaintiff.

Fred G. Benton, of Baton Rouge, La., for defendant.

BURNS, District Judge. The plaintiff alleges infringement on its copyright by the defendant, who owned and operated a dance pavilion as a place of entertainment for profit, charging admission fees, in the town of Plaquemine, La.

The specific charge of the bill is that on February 7, 1926, the band employed by defendant played the popular musical compositions. "You Forgot to Remember," "Yes, Sir, That's My Baby," and "What Do I Care, What Do I Care, My Sweetie Turned Me Down," without the knowledge and consent of plaintiff, thereby infringing plaintiff's copyright, for which it is entitled to not less than $250 in the premises of each of the three infringements, as minimum statutory damages under R. S. § 4965, and Copyright Act, section 25(b), 17 USCA § 25(b).

[1] The defendant denies liability for the

performance, which he admits took place, alleging that the orchestra was a unit, for whose performance he was not responsible, since his contract was made with the leader of the band, who engaged his own musicians; that therefore the orchestra leader was an independent contractor, one over whose selections of music he had no control; that he did not know, and had no right to assume, that the orchestra was without license by the owner of the copyright; that there was no relation of master to servant as between himself and the orchestra leader, and therefore he is not liable under the doctrine respondeat superior. This defense is not tenable. The jurisprudence, both English and American, is to the contrary, viz. the mere fact that he operated and controlled the place of public entertainment, charging admission and so operating for a profit, establishes his liability for permitting and authorizing the unlicensed use of plaintiff's musical compositions in and on the premises. Harms v. Cohen (D. C.) 279 F. 276; Trow v. Boyd (C. C.) 97 F. 586; Marsh v. Conquest, 17 C. B. (N. S.) 418, 10 L. T. 717; 144 Eng. Reprint, 169; Performing Rights Society v. Thompson (1918) 34 Law Times, 351; Monohan v. Taylor (1886) 2 Law Times Rep. 685 (L. B. Div.).

[2] The second and alternative defense is that, in the event he is held liable for the infringement because he permitted and therefore authorized the performance of the copyrighted musical compositions, then the plaintiff is entitled to no more than $10 for each performance, because musical compositions such as these popular songs, set to "jazz" or syncopated tunes, can only be classified under the concluding clause of subparagraph 4 of paragraph (b), section 25 (17 USCA § 25 (b), par. 4), and cannot be classified either under paragraph (b) or the first clause of (b), subparagraph 4; that such musical compositions are not dramatic or dramatico-musical or choral or orchestral compositions, but are only the common garden variety of musical compositions, by the infringement of which no obvious substantial damage is wrought.

In other cases such as this, heretofore submitted, and in the absence of serious contest, the contention of plaintiff for the higher classification has prevailed, and awards of minimum damages up to $250 have been allowed. Here, however, I am constrained to hold that the defendant's contention is correct. I agree with defendant's conclusion that the decision in M. Witmark & Sons v. Pastime Amusement Co. (D. C.) 298 F. 470, where $250

was allowed as damages for a pirated organ rendition of "Kiss Me Again," a popular song of the same general character and value as those in question here, seems to misconstrue the meaning and import of the Supreme Court's decision in Westerman Co. v. Dispatch Co., 249 U. S. 100, 39 S. Ct. 194, 63 L. Ed. 499, where, for an infringement of a pictorial illustration, a/minimum award of $250 was made.

Apart from consideration of the fact that no obvious and substantial damage was wrought by the defendant's infringement by the playing of these musical compositions in a cheap rural dance hall, I consider that the value and character of the musical compositions themselves do not entitle them to the dignity of a higher classification than the nondescript class contemplated by the concluding clause of subparagraph 4.

A decree may be entered for plaintiff accordingly, in the sum of $30 upon the basis of $10 for the performance of each of the three compositions.