### IRVING BERLIN, Inc., v. DAIGLE.

### SAME v. RUSSO et al.

Circuit Court of Appeals, Fifth Circuit.
April 2, 1929.

Nos. 5396, 5397.

Thomas G. Haight, of Jersey City, N. J., J. Studebaker Lucas, of New Orleans, La., and Nathan Burkan and Louis D. Frohlich, both of New York City, for appellant.

Fred G. Benton, of Baton Rouge, La., for appellee Daigle.

Fred G. Benton, of Baton Rouge, La. (W. A. Benton, of Baton Rouge, La., on the brief), for appellees Russo.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. These two cases arise under the Copyright Act of March 4, 1909, as amended (title 17, U. S. C. [17 USCA]). They may be disposed of in one opinion.

Appellant, the Irving Berlin Company, Inc., filed bills as copyright proprietor of certain musical compositions, alleging infringement of each by public performance for profit, and prayed for injunctions, for damages of not less than $250 for each infringement, and for reasonable attorney's fees.

In No. 5396 it appears that appellee A. Daigle was the proprietor of a dance pavilion

in Plaquemine, La., a town of about 6,000 inhabitants, to which admission was charged, and three copyrighted pieces were played there by an orchestra. It was held that there was infringement as to each composition. Actual damages and profits were not shown, and the District Court reached the conclusion that under the provisions of section 25 of the act (17 USCA § 25) it was discretionary to award damages of $10 for each infringement, and rendered judgment accordingly. 26 F.(2d) 149.

In No. 5397 it appears that appellees Joseph and Charles Russo were the proprietors of a motion picture theater, also in the town of Plaquemine, La., and during an exhibition of pictures two copyrighted musical compositions were played from records on a phonograph. In this case the District Court did not consider the question of infringement at all, but held that, as appellant had failed to allege and prove that it had filed notice in the Copyright Office in compliance with section 1(e) of the act (17 USCA § 1(e), it could not recover. Judgment was rendered in favor of defendant. 26 F.(2d) 150. In neither case was an injunction granted, nor attorney's fees allowed.

The Copyright Act gives to the copyright proprietor the exclusive rights to print, reprint, publish, and vend the copyrighted work, to perform it publicly for profit, if it be a musical composition, and for the purpose of public performance for profit, and "for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced" (sections 1 (a) and (e), and 5 of the act; 17 USCA §§ 1(a), (e), and 5), and prescribes (section 25) the liabilities incurred by any person who shall infringe the copyright. With reference to the last-stated right the act, in section 1(e), provides as follows:

"Provided, that the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; and the copyright proprietor may require, and if so the manufacturer shall furnish, a report under oath on the 20th day of each month on the number of parts of instruments manufactured during the previous month serving to reproduce mechanically said musical work, and royalties shall be due on the parts manufactured during any month upon the 20th of the next succeeding month. The payment of the royalty provided for by this section shall free the articles or devices for which such royalty has been paid from further contribution to the copyright except in case of public performance for profit. It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement of such copyright.

"In case of the failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount.

"The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such reproduction or rendition occurs."

The evidence in the Daigle Case, No. 5396, showed an infringement by the appellee of the copyright which was in question in that case, as the unauthorized public performance of a copyrighted musical composition in a dance hall to which admission is charged is an infringement, as clearly the

music is the main inducement to pay the admission fee. Herbert v. Shanley Co., 242 U. S. 591, 37 S. Ct. 232, 61 L. Ed. 511. In the case of Westerman Co. v. Dispatch Co., 249 U. S. 100, 39 S. Ct. 194, 63 L. Ed. 499, the court passed on the question of the damages recoverable under section 25(b), 17 USCA § 25(b), in lieu of actual damages and profits for an infringement of a copyright for pictorial illustrations, and held that the damages "in lieu of actual damages and profits" could not be less than $250 in each case. The reasoning in that case is applicable to the case under consideration for the infringement of a copyright of a musical composition, with the result that for the infringement in question the minimum amount assessable was $250 instead of the amount stated in subdivision "fourth" of section 25, 17 USCA § 25(b)(4).

■ The subject of the above set out part of section 1(e) of the act is the right of a proprietor of a copyright for a musical composition with reference to reproducing mechanically the copyrighted work. That part of the act does not deal with other separate and distinct exclusive rights conferred on the copyright proprietor. The connection in which the words "such copyright" are used in the provision "and any failure to file such notice shall be a complete defense to any suit, action or proceeding for any infringement of such copyright," indicates that those words referred, not to the aggregate of rights possessed by the copyright proprietor, but to the mechanical reproduction right conferred on him, which right was referred to in the clause: "Provided, that the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work," etc. We conclude that the provision in question does not have the effect of making a failure to file the notice referred to a defense to a suit for the infringement of the right to perform a copyrighted work publicly for profit. The same conclusion was reached in the case of Standard Music Roll Co. v. F. A. Mills, Inc. (C. C. A.) 241 F. 360. It follows that the court erred in its above-mentioned ruling in the Russo Case, No. 5397. As that ruling calls for a reversal of the judgment in that case it is proper, for the purposes of another trial, to consider the question as to what relief is grantable for the infringement alleged in that case.

■ We first consider a suggestion which has been made as to the meaning and effect of a provision contained in section 25 of the Copyright Act. That section, which defines the liability of an infringer, after dealing in subsections (a), (b), (c), and (d), 17 USCA § 25(a), (b), (c), (d), with the subjects injunction, damages, and profits, impounding during the pendency of the action of alleged infringing articles, and destruction of infringing copies and plates, contains the following provision:

"(e) Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work upon the parts of musical instruments serving to reproduce mechanically the musical work, then in case of infringement of such copyright by the unauthorized manufacture, use, or sale of interchangeable parts, such as disks, rolls, bands, or cylinders for use in mechanical music-producing machines adapted to reproduce the copyrighted music, no criminal action shall be brought, but in a civil action an injunction may be granted upon such terms as the court may impose, and the plaintiff shall be entitled to recover in lieu of profits and damages a royalty as provided in section 1, subsection (e), of this title: Provided also, that whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition upon the parts of instruments serving to reproduce mechanically the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention, by registered mail, upon the copyright proprietor at his last address disclosed by the records of the copyright office, sending to the copyright office a duplicate of such notice; and in case of his failure so to do the court may, in its discretion, in addition to sums hereinabove mentioned, award the complainant a further sum, not to exceed three times the amount provided by section 1, subsection (e), by way of damages, and not as a penalty, and also a temporary injunction until the full award is paid."

The just set out provision deals only with the subject of royalties for the infringement of the exclusive right of mechanical reproduction of musical works. This has been recognized by the lawmakers in the caption given to that provision in the United States Code, title 17, § 25(e), 17 USCA § 25(e): "Royalties for use of mechanical reproduction of musical works." By the terms of the provision, section 1(e), conferring on the proprietor of a copyrighted musical work the exclusive right of reproducing it mechanically, one who acquires that right by contract with the proprietor, or by complying

with the prescribed requirements as to paying royalties, does not by such acts acquire the right of publicly performing for profit the copyrighted work. As the provision in question deals only with the subject of liability for infringement of the mechanical reproduction right, it is to be inferred that the word "use," in the clause "then in case of infringement of such copyright by the unauthorized manufacture, use, or sale of interchangeable parts," etc., refers only to such use as would have been authorized if the user had been a licensee of the mechanical reproduction right, and not to a use of the copyrighted work, which would be an infringement of another separate and distinct exclusive right possessed by the copyright proprietor, and not acquired by an alleged infringer.

Nothing in the provision in question indicates a purpose to deal with the subject of the infringement of the right to perform publicly for profit, that right being one which is not acquired by a compliance with the requirement as to paying or becoming liable for royalties for using means of mechanically reproducing the copyrighted work. We are of opinion that the language of the provision in question negatives the conclusion that it was intended to have such effect that an infringer of the mechanical reproduction right could, by making himself liable in damages for such infringement, restrict or affect his liability for an unauthorized public performance for profit of the copyrighted work.

The provision conferring on the proprietor of a copyrighted musical composition the exclusive right of publicly performing for profit contains nothing which can be given the effect of excepting a public performance for profit by means of a phonograph record. The absence of an intention to create such an exception is indicated by the provision with reference to reproduction or rendition of a musical composition by or upon coin operated machines. As to the liability for the infringement alleged in the Russo Case, No. 5397, we think it is enough to say, in addition to what already has been said, that that liability is governed by provisions of section 25 of the copyright statute other than the provision contained in subdivision (e) of that section.

The judgment in each of the cases is reversed, and the causes are remanded for further proceedings not inconsistent with this opinion.

FOSTER, Circuit Judge. I agree with the conclusion of the majority in all respects, except as to the measure of damages to be awarded for infringement by use of a phonograph record for a public performance for profit. The question is not free from doubt, as the statute, with relation to the measure of damages, is decidedly ambiguous. In construing it, I think we ought to endeavor to ascertain the intent of Congress and try to give effect to it.

Prior to the enactment of the statute of 1909 a composer was not protected by copyright of his musical compositions from infringement by setting the music on a phonograph record or similar device. White-Smith Music Co. v. Appollo Co., 209 U. S. 1, 28 S. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628. One of the purposes of the act of 1909 was to overcome the effect of that decision, and to afford a copyright proprietor some measure of protection of his mechanical rights, without unduly burdening the public. This clearly appears from the elaborate report of the committee of the House of Representatives accompanying the bill. H. R. 28, 192. After an extensive review of the law of copyright in the United States and other countries, speaking of section 1(e), the committee said:

"It was this situation that your committee had in view when they sought to formulate a law which would give to the composer the exclusive right to prohibit the reproduction of his music by mechanical means on the part of anybody if he desired, to secure to him adequate compensation from all reproducers if he did not desire to exercise this exclusive right to prohibit and to prevent the establishment of a great trade monopoly. We fully believe that all this will be secured under the provisions of subsection (e).

"It is not the intention of the committee to extend the right of copyright to the mechanical reproductions themselves, but only to give the composer or copyright proprietor the control, in accordance with the provisions of the bill, of the manufacture and use of such devices."

It is evident that it was the intention of Congress, in enacting the Copyright Act of 1909, to keep separate and distinct the character and extent of protection according to what might be termed the mechanical rights of composers from the ordinary rights of copyright and the act is easily susceptible of that construction.

If the composer sets his music mechanically, all others may do the same, by paying the statutory royalty of two cents on each part manufactured. Section 1(e). No such

right is given the public as to sheet music. In order to preserve the copyright of musical compositions, a notice of copyright must be affixed to each copy published and offered for sale. Section 9 (17 USCA § 9). There is no provision in the act for the affixing of a notice of copyright to a phonograph record or other mechanical contrivance, and we may take notice from the universal use of phonographs that such notice is not affixed. Any person using a phonograph record for a public performance may be presumed to do so innocently. This seems to be recognized by providing in section 25(e) that no criminal action should be brought for such infringement while under the general provisions of the act willful infringement for profit is a misdemeanor. Section 28 (17 USCA § 28).

The act makes no distinction as to the amount of minimum and maximum damages to be awarded for various kinds of infringement. It is the same for publishing, selling, or publicly performing a musical composition printed in the ordinary manner. There would seem to be no good reason why a public performance by means of a phonograph disk should entitle the copyright proprietor to more damages than the manufacture and sale of the disk. In patent cases the rule is that established license fees are the best measure of damages for infringement. Clark v. Wooster, 119 U. S. 322, 7 S. Ct. 217, 30 L. Ed. 392. By analogy that would seem to be a good rule to apply to the recovery of damages for infringement by use of a phonograph record, which any one is at liberty to manufacture and sell on payment of a royalty. I think the act makes such provisions.

Section 25(e) of the act provides that, whenever the owner of a musical copyright has permitted the manufacture of disks, etc., "in case of infringement of such copyright by the unauthorized manufacture, *use*, or sale of interchangeable parts, such as disks," etc., " * * * the plaintiff shall be entitled to recover in lieu of profits and damages a roy-

alty as provided in section 1, subsection (e)." Using a disk for a public performance for profit is certainly an unauthorized use of it. I cannot imagine any other unauthorized use.

It is hardly possible for a copyright proprietor to suffer actual damages by the public performance of his composition by mechanical means as clearly it taxes credulity to say any one would pay to attend such a performance. About the only profitable public performance of phonograph records would be by use of a coin slot machine and that is exempted by section 1(e). The reason for providing statutory damages for infringement in lieu of profits and actual damages is because of the difficulty of proving profits of the infringer or damages to the copyright proprietor. It would seem that the license fee fixed by the statute for manufacture and sale of a record would be adequate compensation for other infringement. This conclusion is strengthened by the provision of section 1(e) exempting performance by slot machines.

To adopt the rule that a minimum award of $250 must be granted in each case of infringement by use of a phonograph record in a moving picture show, or a small, cheap restaurant, or a boot-black stand, in all of which they are frequently used, causes the resulting damages to be so excessive as to be unconscionable, an intention I can not attribute to Congress. I conclude that the amount of damages to be awarded for infringement by a public performance for profit by use of a phonograph record is to be measured by the provision of section 25(e) for royalties.

The collection of royalties of a few cents is a small thing, ordinarily not worthy of the notice of a court of equity, but the statutory provision for an injunction against infringement, together with the awarding of full costs and reasonable attorney's fees (section 40, 17 USCA § 40), afford ample protection to the copyright proprietor in those cases in which it may be advisable to sue.