## BUCK et al. v. DUNCAN et al.

## SAME v. JEWELL–LA SALLE REALTY CO.

District Court, W. D. Missouri, W. D.
April 18, 1929.

Nos. 1204, 1207.

E. S. Hartman, of Chicago, Ill., Maurice J. O'Sullivan, of Kansas City, Mo., Nathan Burkan and Louis D. Frohlich, both of New York City, Karl P. Spencer, of St. Louis, Mo., and Philip Cohen, of Los Angeles, Cal., for plaintiffs.

Charles M. Blackmar (of Meservey, Michaels, Blackmar, Newkirk & Eager) and Kenneth E. Midgley, both of Kansas City, Mo., for defendants.

OTIS, District Judge. In these two cases plaintiffs seek injunctions against, and damages from, the defendant Jewell-La Salle Realty Company, on account of alleged copyright infringements. In case No. 1204 it is alleged that the defendant infringed and threatens to continue to infringe the copyright to a musical composition entitled "Just Imagine," and in case No. 1207 it is alleged that the defendant infringed and is threatening to continue to infringe the copyright to a musical composition entitled "I'm Winging Home (Like a Bird That is on the Wing)."

[1, 2] The facts are that the Jewell-La Salle Realty Company owns and operates in Kansas City, Mo., a hotel known as the La Salle Hotel. In that hotel it has a master radio receiving set by means of which it furnishes musical entertainment to its guests in its public rooms and also to two hundred private rooms by means of wires leading from this master radio receiving set. Any musical composition picked up by the receiver can be and is simultaneously heard throughout the hotel.

On October 4, 1928, and at other times, the musical compositions "Just Imagine" and "I'm Winging Home (Like a Bird That is on the Wing)" were thus heard in the hotel.

These musical compositions were copyrighted. The American Society of Composers, Authors, and Publishers had the exclusive nondramatic performing rights in and to these musical compositions and these suits are brought by Gene Buck, one of the plaintiffs, as president of that society, and by the owners of the copyrights.

The question in the cases, so far as count 1 in each case is concerned, is whether the defendant upon the facts stated infringed the copyrights.

1. Section 1 of the Copyright Act (17 USCA § 1(e) provides:

"That any person entitled thereto, upon complying with the provisions of this act, shall have the exclusive right:  *  *  *

"(e) To perform the copyrighted work publicly for profit if it be a musical composition.  *  *  * "

Did the defendant "perform" the copyrighted works here involved "publicly for

profit"? If it did, the injunctions sought should issue and damages should be awarded.

I think the defendant did not perform these musical compositions in the sense in which the word "perform" is used in the act.

One who plays a musical composition on a piano, thereby producing in the air sound waves which are heard as music, certainly performs that musical composition, and, if the instrument he plays on is a piano plus a broadcasting apparatus, so that waves are thrown out, not only upon the air, but upon the ether, then also he is performing the musical composition. He who only hears the performance is not performing. If the sound waves from the piano fall on the un-aided ears of a listener, that listener has no part in the performance, and, if he is deaf so that he cannot hear without the aid of an amplifier electrically operated which magnifies the sound waves so that they become perceptible to him, he still has no part in the performance. It is true in the latter case he has been enabled to hear the music only by means of a machine operated by himself. By that means he has made that which was inaudible audible to himself. But he has not performed, because he has not created. He has heard only what the performer at the piano created and sent out to be heard.

Would it be said that one who listens over a telephone to a performer on a piano at some point removed from him is himself performing the composition that he hears? It seems to me that that cannot be said. If not, why not? The listener has not heard the sound waves produced by the piano in that case. The original sound waves have been translated into electrical impulses which have been carried by a wire to the place where the listener is. There, by a machine electrically operated, those electrical impulses have been changed again into sound waves which fall upon the listener's ears. The listener over the telephone has not performed because he has not created the music which he has heard.

The right to perform a musical composition is the right to translate that musical composition into waves of sound or waves of ether for the enjoyment of those who are enabled either by natural or artificial means to receive the auditory sensations those waves are calculated to produce. The right to perform a musical composition does not carry with it a proprietary interest in the waves that go out upon the air or upon the ether. They are as much the common property of all as the sunshine and the zephyr.

If I throw open a window so that I can hear the music of a band passing by, am I producing that music? Am I then the performer or participating in the performance? If I lift a telephone receiver and hear the voice of a friend, am I producing that voice? Is it my speech or his? If in perfect analogy to these illustrations, by mechanical means, I receive as music what has been produced elsewhere in such a way that it penetrates my house, I am not the performer who has produced that music.

It is true that if one plays on his phonograph a record of a piece of music he is performing. If it is a copyrighted musical composition, and if the performance is public and for profit, then his act is an infringement of the copyright. Plaintiffs say that there is no difference in principle between playing by phonograph a record impressed on bakelite and playing by radio receiver a record impressed on the ether. Obviously there is a difference. The record on bakelite is a separate and distinct thing from the original performance in the studio where the record was made. Playing that record is performing anew the musical composition imprinted on it. The waves thrown out upon the ether are not a record of the original performance. They are the original performance. Their reception is not a reproduction, but a hearing, of the original performance.

The reception of a musical composition on a radio receiver is not a performance at all. Of course, then, the defendant did not perform these copyrighted musical compositions.

Moreover, infringement must be an intentional act. I do not mean by that that one who performs a copyrighted musical composition publicly for profit is not guilty of infringement merely because he does not know the piece is copyrighted. The law is otherwise. But certainly there must have been an intentional performance of the musical composition. There is an intentional performance when, for example, one plays on an instrument from a sheet of music a piece of music. There is an intentional performance when one plays on a phonograph a record. In either of these cases, if the performance is public and for profit, there is infringement, if the musical composition is copyrighted, and that whether the performer is or is not cognizant of the copyright.

Suppose, however, the proprietor of a hotel has a phonograph playing in his dining room for the entertainment of his guests and suppose that without any request from him or participation on his part a stranger surreptitiously places in the machine a rec-

ord of a copyrighted musical composition. Would it not be unthinkable that that hotel proprietor should be held guilty of infringement and subjected to damages? His intent in no wise entered into that performance. If it was a performance, in no sense was it his performance. It is not possible that mere ownership of a musical instrument carries with it liability for any use to which another may put that instrument.

So in this case the defendant did not intentionally perform the copyrighted musical composition, even if it be granted that radio reception is performance. The defendant had a right to have a radio in its hotel for the entertainment of its guests and to operate that radio. If, while it was operating, some other than the defendant, wholly without defendant's participation, put upon the ether and so threw into defendant's radio electric impulses which came out of the radio as an audible rendition of a copyrighted musical composition, that was not in any sense the act of the defendant. The intent of the defendant did not enter into that act. If it was a performance of a musical composition, it was a performance, not by the defendant, but by the broadcaster, on the defendant's instrument.

If radio reception of a musical composition is not performance of that composition; and if, though it be, it is not performance by the owner of the radio receiving instrument, it is not necessary to consider whether the defendant operated its radio for profit. The plaintiffs are not entitled either to the injunctions prayed or damages sought.

I have cited no authorities because there is none. The case is one of first impression. Certain cases have been cited by the plaintiffs by reason of dicta thought by plaintiffs to be pertinent to the issue here, and those cases I have carefully considered, but I think they do not justify any other conclusion than that which I have reached.

2. In count 7 of case No. 1207 it is charged that the defendant infringed the copyright of a musical composition entitled "He's the Last Word." The infringement is admitted by the defendant. The sole question is as to the proper measure of damages. Plaintiffs insist that the minimum damages which may be allowed are $250 and the defendant insists that the damages which may be allowed are $10. The weight of authority is with the plaintiffs. Waterson, Berlin & Snyder Co. v. Tollefson (D. C.) 253 F. 859; Witmark & Sons v. Pastime Amusement Co. (D. C.) 298 F. 470; Remick & Co. v. General Electric Co. (D. C.) 16 F.(2d) 829; Buck

et al. v. Heretis (D. C.) 24 F.(2d) 876. In only one decided case, Berlin, Inc., v. Daigle (D. C.) 26 F.(2d) 149, was a contrary conclusion reached, and that case on appeal was reversed by the Circuit Court of Appeals for the Fifth Circuit. Berlin, Inc., v. Daigle, 31 F.(2d) 832, decided April 2, 1929.

I resolve the issue in favor of the plaintiffs, and on this count award plaintiffs' damages against the defendant in the amount of $250 and an attorney's fee in the amount of $100.

A decree embodying the foregoing conclusions may be submitted for approval and entry.