## JEROME H. REMICK & CO. v. GENERAL ELECTRIC CO.

(District Court, S. D. New York. December 7, 1926.)

Copyrights ⬤⇒66—One broadcasting unauthorized performance of copyrighted musical composition by radio is liable for "infringement" (Comp. St. § 9517).

Under Comp. St. § 9517, one transmitting unauthorized performance of copyrighted musical composition by radio from a broadcasting station maintained and operated to stimulate sale of radio products is an "infringer," and is liable therefor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

In Equity. Suit by Jerome H. Remick & Co. against the General Electric Company for infringement of copyright of musical composition entitled "Somebody's Wrong." Decree for plaintiff.

See, also, 4 F.(2d) 160.

Nathan Burkan, of New York City, for plaintiff.

Charles Neave and Merrell E. Clark, both of New York City, for defendant.

THACHER, District Judge. The question for decision is whether one who by means of the microphone "picks up" another's unauthorized performance of a copyrighted musical composition and transmits it by radio from a broadcasting station maintained and operated to stimulate the sale of radio products is liable for infringement of copyright. In Remick v. American Automobile Accessories Co., 5 F.(2d) 411, 40 A. L. R. 1511, the Circuit Court of Appeals for the Sixth Circuit held that broadcasting a copyrighted musical composition rendered by an artist employed by the broadcaster was an infringement of a copyright, where the purpose was, as in the case at bar, to stimulate the sale of radio products. I find no grounds for differing with the well-reasoned opinion of Judge Mack in that case. Here the only distinction is that the defendant did not participate in the rendition of the musical production, except by affording to others the opportunity to hear it. Whether this distinction be vital or not depends on the statute. The controlling language is:

"Any person entitled thereto, upon complying with the provisions of this Act, shall have the exclusive right: * * * To perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit." ·Comp. St. § 9517.

Certainly those who listen do not perform, and therefore do not infringe. Can it be said with any greater reason that one who enables others to hear participates in the unauthorized performance, so as to be a contributory infringer? Surely not, if, as is argued by analogy, he merely leaves the window open, so that the strains of the music may be heard by those in the street below. Such is not the case of the broadcaster, equipped with instruments animated by electricity constantly furnished, who throughout the performance of the orchestra picks up each note, translates it into electrical energy, and transmits it to persons within a radius of several hundred miles, so that they may hear the original sound. It is not enough to say that the broadcaster merely opens the window, and the orchestra does the rest. On the contrary, the acts of the broadcaster are found in the reactions of his instruments, constantly animated and controlled by himself, and those acts are quite as continuous and infinitely more complex than the playing of the selection by the members of the orchestra.

That in the process of transmission there is no audible rendition of the musical production until it is heard by the owners of radio receiving sets merely emphasizes the fact that the broadcaster is actively engaged in transmitting to the radio audience the original unauthorized production. In so doing it seems clear that he participates in the infringement. Certainly, if he broadcasts without authority from the owner of the copyright a private rehearsal of a copyrighted production, thus converting the private rendition into a public performance for profit, he contributes to the resultant infringement. If in the case at bar the public had been excluded from the public ballroom of the hotel while the orchestra continued to play and the broadcaster to broadcast, he would have contributed to the infringement while the public was absent; but the presence or absence of an audience in the hotel cannot change the character of his acts of contributory infringement.

It results that there must be a decree for the plaintiff for the usual injunction, minimum damages of $250, as fixed by statute, and an attorney's fee of $1,000.