## METRO–GOLDWYN–MAYER DISTRIBUTING CORPORATION v. BIJOU THEATRE CO. et al.

## EDUCATIONAL FILM EXCHANGES, Inc., et al. v. SAME.

### Nos. 2614, 2615.

Circuit Court of Appeals, First Circuit.

April 7, 1932.

Rehearing Denied June 11, 1932.

Arthur D. Hill, of Boston, Mass., and Edward A. Sargoy, of New York City (Faneuil Adams and Hill, Barlow & Homans, all of Boston, Mass., and Gabriel L. Hess, of New York City, on the brief), for appellants.

John C. Coughlin, of Boston, Mass. (Henry Parkman, Jr., and John Lennox Hannan, both of Boston, Mass., on the brief), for appellees.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

These two cases submitted in one record and argued together are bills in equity in which the plaintiffs seek injunctive relief and damages for infringements of their alleged copyright on certain motion picture films.

Both plaintiffs are corporations organized and existing under and by virtue of the laws of the state of New York and each has a principal place of business in the city and state of New York.

The defendants in both cases are the Bijou Theatre Company, a corporation organized and existing under and by virtue of the laws of the commonwealth of Massachusetts, having an office and place of business in the city of Holyoke in said commonwealth, and M. F. O'Donnell, who is an inhabitant of said city of Holyoke and the manager of said theatre.

The plaintiffs are producers and distributors of motion pictures.

The bills allege that the defendants were engaged in the business of exhibiting motion pictures by giving public performances thereof for profit and in the conduct of such business owned, operated, or controlled the Bijou Theatre in said Holyoke and still operate and control said theatre.

The plaintiffs are copyright proprietors, being the sole and original authors and proprietors, of certain original, unpublished motion pictures, lists of which are set forth in the complaints.

The bills further allege that a large number of prints of each of the copyrighted motion pictures are circulated widely throughout the United States for public exhibition under license agreements; that such license agreements now exist between the plaintiffs and the defendants, under which agreements copyrighted motion pictures are delivered for exhibition to the defendants, such exhibitions to be held on specified dates. It is also alleged on information and belief that defendants are likely, if not restrained and enjoined by order of court, to exhibit the copyrighted pictures of the plaintiffs which may come into their possession in infringement of the respective copyrights thereof and in violation of the exclusive rights of the plaintiffs therein, to the great and irreparable damage of the plaintiffs. It is further alleged that on or about the 17th day of August, 1927, the plaintiffs, distributors, subject to the terms and conditions of written contracts, granted to the Bijou Theatre Company and the company accepted a limited license, under the respective copyrights of the motion pictures mentioned in the bills of complaint, to exhibit the same publicly each for one day only at the above-mentioned theatre. The bills further set forth the dates upon which the pictures were permitted by the contracts to be shown and the dates upon which they were shown, being in each instance one day later than the date fixed in the license agreements. It is alleged that each exhibition and performance was an infringement of the copyright and that each infringement constituted a separate cause of action, all of which are joined in the bills because governed by the same legal rules and involving the same facts, so that for the convenient administration of justice and as a ground of equitable jurisdiction such joinder of separate actions is made to prevent a multiplicity of suits. The prayer of the bill seeks injunctive relief and assessment of damages under section 25 of the Copyright Law (17 USCA § 25), such damages in no event to be less than $250 for each infringement.

The defendants in No. 2614 filed a motion to dismiss the case upon the following grounds: (1) That the plaintiff has not stated in its bill such a cause as entitles it to any relief in equity against these defendants. (2) That the alleged exhibition by the defendant of motion pictures referred to in the bill of complaint was not an infringement of the respective copyrights thereof. (3) That the plaintiff brought action against the defendant Bijou Theatre Company of Holyoke, in the superior court of the commonwealth of Massachusetts in and for the county of Hampden, by a petition filed on or about June 24, 1929, said petition being numbered 32252, for the same matters and causes of action set forth in the plaintiff's bill of complaint; that said action is still pending on the docket of said superior court and remains undisposed of; and that this defendant should not be required to defend two actions pending for the same cause of action. A motion to dismiss was filed by the defendants in No. 2615 upon the first two grounds above stated and upon the additional ground of misjoinder of parties. Ground No. 3 in 2614 is omitted from the motion in No. 2615.

The District Court disposed of the first ground for dismissal in each case, ruling that the actions could be maintained even though no ground for injunctive relief is found to exist (17 USCA § 2), and ruling as to the third ground in No. 2614 that the fact of the pendency of the prior suit in a state court is not ground for abatement of a subsequent suit in the federal court even though the prior suit is between the same parties and for the same cause. Citing McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762; Consolidated Ordnance Co. v. Marsh, 227 Mass. 15, 116 N. E. 394. See, also, Boston & Maine R. R. v. Dutille (C. C. A.) 289 F. 320. The court denied defendants' motion to dismiss on the ground of misjoinder of parties in No. 2615, citing Equity Rule 37 (28 USCA § 723); no exceptions were taken to these rulings of the District Court.

As indicated above, the acts relied upon as constituting infringement are exhibitions of the films in question, thirteen in number in the first case and twelve in number in the second case, alleged to have been unauthorized under the contract or license agreements between the parties.

After hearing the motions to dismiss, final decrees dismissing the bills were entered by order of the District Court, May 26, 1931, based on the second ground alleged. From these decrees the plaintiffs appealed and the cases are before this court upon their assignments of error as follows:

"The court erred in entering the aforesaid decree of May 26, 1931, (1) because the decree was based on an erroneous finding and ruling that the unauthorized exhibitions of the motion picture films in question did not constitute violations of their respective copyrights. (2) Because the decree was based on an erroneous finding and ruling that the contract entered into between the plaintiff and

the defendant concerning exhibition of the motion picture films in question was a bar to proceedings by the plaintiff against the defendant under the Copyright Act for violations of copyright. (3) Because the decree was contrary to the law."

From what is common knowledge it is evident that the questions relating to the use of moving picture films is one of considerable importance, involving as it does large property interests. The production and distribution is one of the great industries of the United States. The income to the producers and distributors, which is the reward for the capital investment, comes from rentals paid by exhibitors for the privilege of exhibiting the pictures which have a wide distribution and enormous patronage throughout the country.

Prints of the pictures or films as they are called are not produced for sale. For all purposes and at all times they remain the property of the copyright proprietors. They are distributed pursuant to exhibition contracts from exchange centers located throughout the country, such distribution being made either by the copyright proprietor or by agents exclusively licensed under the copyright for such purpose. By stipulation of the parties filed October 21, 1930, photostatic copies of the contracts between the parties were annexed to the record for the determination of any and all questions raised by the defendants' demurrer to be considered as the contracts alleged in the plaintiffs' bills of complaint. The motions to dismiss are equivalent to demurrers to the bills.

The form of contract expressly grants to the exhibitor a license under the copyright to exhibit the motion pictures mentioned in the schedules thereof for an expressly limited period of time at the particular theatre specified. In the method of distribution under the license contract pictures which are exhibited in one theatre on a given date may be scheduled and advertised for exhibition in a theatre in another town for the next night, so it becomes important that each picture should be used on the date specified and the film promptly forwarded to the next exhibitor. If this is not done, what is termed in the industry as a "miss-out" occurs and the distributors are deprived of the rental to which they would be entitled, and a resulting financial injury to the exhibitor occurs.

It appears from these few observations that it is of first importance that exhibitors live up to the letter of their contracts. The question to be solved is whether, if they ex-hibit the films on a date other than the date specified in the contract, it constitutes a violation of the proprietor's copyright or merely a breach of contract.

By the Act of March 4, 1909, c. 320, § 11 (35 Stat. 1078), as amended by the Act of August 24, 1912, c. 356 (37 Stat. 488 [17 USCA § 11]), motion picture photoplays and motion pictures other than photoplays are made distinct and separate classes of copyright. They may be infringed like other copyrights by the multiplication or sale of copies. But it is not altogether clear whether or not they can be infringed in any other way. The statute does not specifically confer an exclusive right to perform, represent, or exhibit them, these rights being granted only in case of dramatic and musical works. Section 1 (d), 17 USCA § 1 (d).

Copyright property under the federal law is wholly statutory and depends upon the rights created under the acts of Congress passed in pursuance of authority conferred by article 1, clause 8, § 8, of the Federal Constitution, "To promote the progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

Previous to the adoption of the Federal Constitution in 1787, the national government had no power to act, but prior thereto, in May, 1783, the states were recommended to pass acts securing copyrights for fourteen years. Most of the thirteen original states, including Massachusetts, New Hampshire, and New York, passed such private acts.

In 1790 Congress passed a federal act which made the private acts of the states unnecessary. Various acts were subsequently passed by Congress until the state of the copyright law became so confused that in 1909 there was passed a new copyright code repealing all previous legislation and providing comprehensively for the whole subject of copyrights, including literary, artistic, dramatic, musical, and other rights, but no mention was made of motion picture photoplays and motion pictures other than photoplays. The Act of 1909 was amended in 1912.

The provisions of the Copyright Law of 1909 as amended by the Act of 1912 pertinent to this case are as follows:

"Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

"(a) To print, reprint, publish, copy, and vend the copyrighted work. * * *

"(d) To perform or represent the copyrighted work publicly if it be a drama or, if it be a dramatic work and not reproduced in copies for sale, to vend any manuscript or any record whatsoever thereof; to make or to procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, performed, represented, produced, or reproduced; and to exhibit, perform, represent, produce, or reproduce it in any manner or by any method whatsoever. * ' *" (17 USCA § 1.)

"The application for registration shall specify to which of the following classes of work in which copyright is claimed belongs; * * *

"(d) Dramatic or dramatico-musical compositions; * * *

"(j) Photographs; * * *

"(l) Motion-picture photoplays;

"(m) Motion pictures other than photoplays.

"The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title." (17 USCA § 5.)

"Copyright may also be had of the works of an author, of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition; of a title and description, with one print taken from each scene or act, if the work be a motion-picture photoplay; * * * of a title and description, with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay. * * *" (17 USCA § 11.)

The classifications (l) and (m) above quoted of section 5, and the quoted provisions of section 11 prescribing the method of registering copies of motion pictures, were brought into the Act of March 4, 1909, by amendment in 1912 under the Townsend Bill, so called (35 Stat. 1075–1088, 37 Stat. 488).

From an analysis of the statute it appears that section 5 classifies the "works" that are open to registration and copyright under the law and shows that motion picture photoplays and motion pictures other than photoplays are such "works."

While a motion picture photoplay or a motion picture other than a photoplay is a "work," section 1 of the act states that "any person entitled thereto," that is, to a work which is a motion picture photoplay or which is a motion picture other than a photoplay, has an exclusive right only, "(a) to print, reprint, publish, copy, and vend" such copyrighted works. Subdivision (b) of section 1 has no application to this case. Subdivision (d) of section 1 has application only in case the copyrighted work is a drama or dramatic work and then the provisions of subdivision (b) apply only to "any person entitled" to such copyrighted drama or dramatic work. Under (d), if a person owns a copyrighted drama or dramatic work, he has the exclusive right "to make or to procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited * * * and to exhibit * * * it in any manner or by any method whatsoever."

The words in subdivision (d), "any transcription or record thereof," reasonably include a motion picture photoplay depicting the drama or dramatic work, and that subdivision in terms gives the author or owner of the copyrighted drama the exclusive right to exhibit the motion picture photoplay, the transcription or record depicting the drama or dramatic work. In other words, section 1 (d) contains the important provisions essential to a decision of this case.

It is contended, however, that the protection afforded to copyrighted films is limited to duplication or vending of the films, and that an unlicensed exhibition of a copyrighted picture is not within the scope of the protection afforded; that the exhibition complained of in these cases is neither a publication nor a "copy" within the meaning of section 1 (a) of the act; and that motion pictures cannot be classed as a "dramatic work" as that phrase is used in section 1 (d).

It is evident that it was the intention of Congress, in enacting the Copyright Act of 1909, to keep separate and distinct the character and extent of protection according to what might be termed the mechanical rights of composers from the ordinary rights of copyright, but to accord protection to both if the production be literary, dramatic, or musical.

The case of White-Smith Music Pub. Co. v. Apollo Co., 209 U. S. 1, 28 S. Ct. 319, 322, 52 L. Ed. 655, 14 Ann. Cas. 628, was an action brought to restrain infringement of the copyrights of two musical compositions. The appellee, defendant below, was engaged in the sale of piano players, player pianos, and

perforated rolls of music used in connection therewith. The appellant as assignee of Adam Geibel, the composer, alleged compliance with the Copyright Act and a copyright was duly obtained on or about March 17, 1897. The action was brought under the provisions of the Copyright Act, Rev. St. § 4952. On behalf of the appellant it was insisted that it was the intention of the Copyright Act to protect the intellectual conception which resulted in the compilation of notes which, when properly played, produced the melody which was the real invention of the composer. It was insisted that this was the thing which Congress intended to protect and that the protection covered all means of expression of the order of notes which produced the air or melody which the composer invented. On the other hand, it was contended by counsel for the appellee that the extent of the protection is a matter of statutory law and that it had been extended only to the tangible results of mental conception, and that only the tangible thing is dealt with by the law, and its multiplication or reproduction is all that is protected by the statute. Mr. Justice Day speaking for the court says: "In the last analysis this case turns upon the construction of a statute, for it is perfectly well settled that the protection given to copyrights in this country is wholly statutory. Wheaton v. Peters, 8 Pet. 590, 8 L. Ed. 1055; Banks v. Manchester, 128 U. S. 244, 253, 9 S. Ct. 36, 32 L. Ed. 425, 429; Thompson v. Hubbard, 131 U. S. 123, 151, 9 S. Ct. 710, 33 L. Ed. 76, 86; American Tobacco Co. v. Werckmeister, 207 U. S. 284, 28 S. Ct. 72 [52 L. Ed. 208, 12 Ann. Cas. 595]. Musical compositions have been the subject of copyright protection since the statute of February 3, 1831 (4 Stat. 436, c. 16), and laws have been passed including them since that time."

Continuing the court said: "What is meant by a copy? We have already referred to a common understanding of it as a reproduction or duplication of a thing. * * * Various definitions have been given by the experts called in the case. The one which most commends itself to our judgment is perhaps as clear as can be made, and defines a copy of a musical composition to be 'a written or printed record of it in intelligible notation.' It may be true that in a broad sense a mechanical instrument which reproduces a tune copies it; but this is a strained and artificial meaning. When the combination of musical sounds is reproduced to the ear it is the original tune as conceived by the author which is heard. These musical tones are not a copy which appeals to the eye. In no sense can musical sounds which reach us through the sense of hearing be said to be copies, as that term is generally understood, and as we believe it was intended to be understood in the statutes under consideration. * * * The statute has not provided for the protection of the intellectual conception apart from the thing produced, however meritorious such conception may be, but has provided for making and filing of a tangible thing, against the publication and duplication of which it is the purpose of the statute to protect the composer."

It will be noted that the above-entitled case was founded upon a copyright granted in 1897 and was decided by the Supreme Court in 1898.

To the same point, see Kennedy v. McTammany (C. C.) 33 F. 584, in which Colt, J., held that manufacturing and sale of perforated strips of paper to be used in organettes, by which a certain tune is produced, was not a violation of the copyrighted sheet of music of the same tune. See, also, Serrana v. Jefferson (C. C.) 33 F. 347; Amberg File Co. v. Shea (C. C. A.) 82 F. 314; White-Smith Music Pub. Co. v. Apollo Co. (C. C. A.) 147 F. 226; M. Witmark & Sons v. Standard Music Roll Co. (C. C. A.) 221 F. 376.

In the case of Irving Berlin, Inc., v. Daigle, 31 F.(2d) 832, 835, Judge Foster of the Circuit Court of Appeals in the Fifth Circuit, in a concurring opinion, says: "It is evident that it was the intention of Congress, in enacting the Copyright Act of 1909, to keep separate and distinct the character and extent of protection according to what might be termed the mechanical rights of composers from the ordinary rights of copyright and the act is easily susceptible of that construction."

One of the purposes of the act of 1909 was to overcome the effect of the decision in the case of White-Smith Music Pub. Co. v. Apollo Co. and other analogous cases and to afford a copyright proprietor some measure of protection or control of the mechanical devices which when played reproduce the musical composition of the composer.

Section 1 (e) of the Act of 1909, 17 USCA § 1 (e), provides: " * * * As a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce

mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof."

From the foregoing cases the conclusion must follow that copyright law being entirely statutory, Congress felt it was necessary for the protection of the authors of musical productions to insert in the statute of 1909 the above provision with reference to the perforated rolls used on player pianos and other sound producing devices used in phonographs and victrolas, but there is nothing in the act which specifically affords protection from the exhibition of films used in moving picture machines.

Another case determined prior to the act of 1909 is the case of Harper & Bros. v. Kalem Co. (C. C. A.) 169 F. 61, 63, wherein it was held that a dramatization of a copyrighted novel Ben Hur was a dramatic production within the meaning of the copyright law and consequently was an infringement of the copyright on the novel, because by the statute the copyright owner is given exclusive control of dramatization and dramatic performance of his work. It was also held that since the film or picture of the dramatization of Ben Hur only represents the artist's idea of what the author has expressed in words, the picture does not, in itself, infringe the copyrighted book or drama. But in the course of the opinion Ward, Circuit Judge, says: "When the film is put on an exhibiting machine, which reproduces the action of the actors and animals, we think it does become a dramatization, and infringes the exclusive right of the owner of the copyrighted book to dramatize it, as well as his right as owner of the copyrighted drama, and of Klaw & Erlanger's right as owners of the performing right publicly to produce it. In other words, the artist's idea of describing by action the story the author has written in words is a dramatization. It is not necessary that there should be both speech and action in dramatic performances, although dialogue and action usually characterize them," citing Daly v. Palmer, 6 Blatchf. 256, Fed. Cas. No. 3,552.

The case was taken on appeal to the United States Supreme Court, Kalem Co. v. Harper Bros., 222 U. S. 55, 32 S. Ct. 20, 21, 56 L. Ed. 92, Ann. Cas. 1913A, 1285.

Mr. Justice Holmes in the course of the opinion says: "The subdivision of the question that has the most general importance is whether the public exhibition of these moving pictures infringed any rights under the copyright law. By Rev. Stat. § 4952, as amended by the act of March 3, 1891, c. 565 (26 Stat. 1106), authors have the exclusive right to dramatize any of their works. So, if the exhibition was or was founded on a dramatizing of Ben Hur, this copyright was infringed. We are of opinion that Ben Hur was dramatized by what was done. Whether we consider the purpose of this clause of the statute, or the etymological history and present usages of language, drama may be achieved by action as well as by speech. Action can tell a story, display all the most vivid relations between men, and depict every kind of human emotion, without the aid of a word. * * * The essence of the matter in the case last supposed is not the mechanism employed, but that we see the event or story lived. The moving pictures are only less vivid than reflections from a mirror. With the former as with the latter our visual impression—what we see—is caused by the real pantomime of real men through the medium of natural forces, although the machinery is different and more complex. * * * If, as we have tried to show, moving pictures may be used for dramatizing a novel, when the photographs are used in that way they are used to infringe a right which the statute reserves."

The case of Photo-Drama Motion Picture Co., Inc., v. Social Uplift Film Corp., 220 F. 448, 450, decided January 12, 1915, by the Circuit Court of Appeals in the Second Circuit, was a case in which one Kauffman wrote a novel entitled "The House of Bondage." He assigned his right to copyright the same to Moffatt Yard & Co. Moffatt Yard & Co. duly secured copyright. It was held that that gave them the exclusive right to publish and sell the novel and to make dramatization of it whether in the usual form for acting on the stage of a theatre or in the more recent form of a motion picture play. It was also held that since the amendment of the Copyright Act in 1912, passed subsequent to the Kalem Case, the two rights were separable, that is, there may be a copyright for a dramatization to be acted on the stage and a copyright for a dramatization of the new sort, that is, arranged in motion pictures.

Judge Lacombe in the course of the opinion says: "The case here presented is unlike some of those cited on appellant's brief, where the author of a book or of a play has assigned to some one all the dramatic rights thereto without reservation. Such an as-

signment conveys the right to acquire a copyright under the statute which will give an exclusive right to both an old-style dramatization and the modern variant, a motion picture presentation of the drama." Compare Aeolian Co. v. Royal Music Roll Co. (D. C.) 196 F. 926.

The District Court in reaching its conclusion stresses the point that because moving pictures were not commercially known when the act of 1909 was passed that as a general rule the effect of any new invention in any given field must be a matter for legislative consideration rather than for the extension of existing statutes by judicial construction, citing the Mikado Case (C. C.) 25 F. 183, 187, and McBoyle v. United States, 283 U. S. 25, 51 S. Ct. 340, 75 L. Ed. 816. This argument as applied to the instant case appears to have been considerably shaken by the opinion of Mr. Justice Brandeis in Buck v. Jewell-LaSalle Realty Co., 283 U. S. 191, 51 S. Ct. 410, 411, 75 L. Ed. 971, 76 A. L. R. 1266, wherein it was contended that the copyright act may not reasonably be construed as applicable to one who merely receives a composition which is being broadcast through a radio. In answer to this contention it is said: "Although the art of radio broadcasting was unknown at the time the Copyright Act of 1909 was passed, and the means of transmission and reception now employed is wholly unlike any then in use, it is not denied that such broadcasting may be within the scope of the act." Citing Kalem Co. v. Harper Bros., 222 U. S. 55, 32 S. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285; Gambart v. Ball, 14 C. B. (N. S.) 306, 319. To the same effect are the following cases: M. Witmark & Sons v. L. Bamberger Co. (D. C.) 291 F. 776; Remick & Co. v. General Electric Co. (D. C.) 16 F.(2d) 829. See, also, Edison v. Lubin (C. C. A.) 122 F. 240, 242. Remick & Co. v. American Automobile Accessories Co. (C. C. A.) 5 F.(2d) 411, 40 A. L. R. 1511.

In the case of Tiffany Productions, Inc., v. Dewing et al. (D. C.) 50 F.(2d) 911, Judge Coleman, in a similar case, reached a conclusion contrary to that of the District Court in the instant case. His opinion is well considered and appeals to us. He held that the projection of a photoplay film on a screen without the copyright owner's permission was an infringement. His opinion is expressly limited to motion picture photoplays, and does not refer to motion pictures other than photoplays.

■ The copyright statutes ought to be reasonably construed with a view to effecting the purpose intended by Congress. They ought not to be unduly extended by judicial construction to include privileges not intended to be conferred, nor so narrowly construed as to deprive those entitled to their benefit of the rights Congress intended to grant.

Prior to the Act of 1909, mechanical devices, including music rolls, disks, records, etc., for the mechanical reproduction of sound, were held not within the protection of the copyright laws in the United States and did not infringe protected works which they were the means of audibly reproducing. But by the Act of 1909 as amended by the Act of 1912, copyright proprietors have been given control of devices serving to reproduce mechanically the musical work so that now the unauthorized manufacture or sale of music rolls, disks, or other mechanical devices is an infringement of the copyright on the musical work which they serve to reproduce. It is now held that broadcasting musical productions for profit over a radio may constitute an infringement.

No sound reason appears why publication through the sense of hearing is more damaging than publication through the sense of sight. If inhibition is applicable to the former, it should also apply to the latter. There appears to be an increasing tendency to liberalize the construction of copyright statutes to meet new conditions which have rapidly developed within the last decade and which are continuing to develop, perhaps most strikingly illustrated by the application of radio broadcasting to copyright. Motion picture photoplays and motion pictures other than photoplays are made distinct and separate classes of copyright.

As we understand the term "motion picture photoplays," they are motion pictures founded upon existing drama or dramatization of literary productions. In this respect they differ from "motion pictures" under classification (m). The unauthorized exhibition of motion picture photoplays seems to have been consistently held, since the Kalem Case to be an infringement of a copyrighted dramatic work.

An examination of the contracts made a part of the record indicate that all of the twenty-five motion pictures mentioned by title in the bills of complaint are photoplays.

■ The bills of complaint do not allege that the copyrighted films are founded on copyrighted novels, dramas, scenarios, or other

dramatic compositions. Neither do they say they are not. We are left in doubt. But the plaintiffs do allege in their bills of complaint that they are the copyright proprietors and the sole and original authors of the unpublished motion pictures upon which the actions are based. They also allege that they have the exclusive right to publish, copy, use, vend, produce, reproduce, perform, represent, and exhibit said works in any manner or by any method whatsoever.

Of course the last sentence is only a conclusion of law. It is not admitted by the demurrers to the bills. Witherell & Dobbins Co. v. United Shoe Machinery Co. (C. C. A.) 267 F. 950, 955.

If, from the above-mentioned allegations in the bills, we are to infer that the photoplays are founded upon copyrighted dramatic productions of which the plaintiffs are the sole proprietors, the bills should be amended so that nothing be left to inference.

By the stipulation of counsel the photostatic copies of the contract are made a part of the case for the determination of any and all questions raised by the defendants' demurrers.

"By reference to the contracts it appears that we are dealing only with photoplays, which term connotes a moving picture founded upon a dramatic production.

We hold that films which are founded upon copyrighted dramas or other dramatic compositions are protected under the provisions of section 1 (d) of the Copyright Act and their unlicensed exhibition is an infringement of the copyrighted dramatic composition.

We are not called upon to decide whether the unlicensed exhibition of a motion picture other than a photoplay would constitute an infringement of the copyrighted film of such a picture.

Judgments went against the plaintiffs on demurrer. The pleadings are not explicit and leave too much for inference. If the court can see that the plaintiffs have justiciable causes of action against the defendants, their rights ought not to be determined finally upon faulty pleadings. They should be allowed an opportunity to amend. We think the judgments should be set aside and the cases remanded to the District Court for amendments to the pleadings if the plaintiffs so desire.

As to whether or not the plaintiffs have rights of action for infringements of copyright or whether their actions should be con-

fined to breaches of contracts is another question which cannot be satisfactorily determined upon the pleadings.

It may transpire that the plaintiff in No. 2614, by bringing an action in the state court upon its contract, has made an election and waived the tort and should be held to pursue the remedy on the contract. If the plaintiffs file amendments to their bills, the defendants should have leave to file answers and the cases proceed to trial upon their merits.

The decree of the District Court in each case is set aside, and the cases are remanded with direction to allow either plaintiff to amend its bill. If, however, the plaintiff in either case does not elect to amend, the decree of the District Court in such case is affirmed with costs in this court; but if either plaintiff elects to amend its bill and goes to trial on the merits, no costs of this court in such case will be allowed either party.