## METRO–GOLDWYN–MAYER DISTRIBUTING CORPORATION v. BIJOU THEATRE CO. OF HOLYOKE et al.

## EDUCATION FILM EXCHANGES, Inc., et al. v. SAME.

Nos. 3254, 3255.

District Court, D. Massachusetts.

March 13, 1933.

.See, also, 50 F.(2d) 908; 59 F.(2d) 70.

Hill, Barlow & Homans, of Boston, Mass., for plaintiffs.

John C. Coughlin, of Boston, Mass., for defendants.

McLELLAN, District Judge.

In each of the above-entitled cases, in which the plaintiff seeks statutory damages for copyright infringement and an injunction, the defendants have filed a motion to dismiss the amended bill of complaint. The grounds of each motion are the same, and will be stated in detail later. While in one case the plaintiff Educational Film Exchanges, Inc., is the copyright proprietor, and the New York Exchange for Educational Films, Inc., its exclusively licensed distributor, and in the other case Metro-Goldwyn-Mayer Distributing Corporation is both the copyright proprietor and the distributor, the bills of complaint are for practical purposes identical. Accordingly, where reference is made to the plaintiff or to the bill of complaint, it will be understood that reference is made to all three plaintiffs and to both amended bills of complaint, unless the contrary appears.

The amended bill of complaint alleges in substance, and the motion to dismiss, which is equivalent to a demurrer, admits, that the plaintiff is the original author of original unpublished motion picture play films, for each of which copyrights were secured by publication and the requisite deposit in the Copyright Office at Washington, whereupon the Register of Copyrights issued to the plaintiff certificates of copyright registration. (Bill of Complaint, par. 3.)

It is averred that each of the motion picture photoplay films listed in the bill of complaint was produced by the plaintiff, its servants and agents, by recording in accordance with a written or oral continuity or scenario, by processes analogous to photography, upon a sensitized strip of translucent celluloid known as a negative, a series of images depicting upon the negative in various degrees of light and shade pantomimic actions of human or other characters arranged in various settings and acting forms. From these negatives the plaintiff produced on similar material copies known in the industry as positive prints. (Paragraph 5.)

The exhibition of the films consists of rapidly passing one of the prints thereof through an apparatus projecting light rays through such moving print, by which there is cast upon a screen or other surface by such projected rays enlarged reproductions of the images depicted upon such print, the rapidity and continuity of the change of the projected reproductions of the images creating for the beholder a dramatic performance or representation in pantomime upon the screen "depicting and portraying a plot or sequence of incidents, situations, or events, with appropriate characters, in various settings or acting forms, and which are wholly or partially fictional or imaginary in nature." (Paragraph 5.)

The defendant Bijou Theatre Company of Holyoke is a Massachusetts corporation, conducting its business in Holyoke, and the defendant M. F. O'Donnell is a citizen of the commonwealth of Massachusetts. The defendant Bijou Theatre Company was engaged in the business of exhibiting motion picture photoplay films to the public for profit in Holyoke, Mass., at which place the photo films were exhibited to patrons paying an admission charge therefor, whereas the defendant M. F. O'Donnell was in the same business on behalf of the corporate defendant. (Paragraphs 6, 7, and 8.)

By written agreement, the plaintiff agreed to furnish to the corporate defendant a motion picture photoplay film print of each of the motion picture photoplays listed in the bill of complaint, for the purpose only of using the same for the exhibitions which the plaintiff authorized, and licensed the defendant to give at the Bijou Theatre. (See amendment to amended bill of complaint.)

Pursuant to the respective written agreements, the plaintiff delivered and intrusted to the corporate defendant the possession of the respective motion picture photoplay film prints, and the defendants used the same on the respective licensed dates and on other

dates not covered by the license agreements. (Paragraphs 9 and 10.)

The photoplay film prints were each founded upon the original motion picture photoplay films for which plaintiff had secured statutory copyrights. Unauthorized exhibitions of the respective motion picture photoplay film prints founded and based upon original works in which statutory copyrights subsisted as copyrighted motion picture plays were given without the permission or authority of the plaintiff, and infringed upon the statutory copyrights so subsisting. (Paragraph 10.)

The plaintiff has a large capital investment in the copyright proprietorship and distribution of the copyrighted films, prints whereof are made, not for sale, but for distribution for hire to theaters operated by exhibitors of motion picture photoplay films. The prints are in constant, continuous, and wide circulation for the exhibition of motion picture photoplay films under license agreements strictly limiting the times and places of such performances. (Paragraph 11.)

The bill of complaint states that, by reason of the exhibitions and performances of the copyrighted motion picture photoplay films without the license or authority of the plaintiff, the defendants will, if not enjoined, retain copyrighted motion picture photoplay films and exhibit or re-exhibit them in infringement of the various copyrights thereof and in violation of the exclusive rights of the plaintiff therein; "and that, further, by reason of such unauthorized retention or acquisition of prints of said motion picture photoplay films, the plaintiff distributor may be subjected to claims for damages by other exhibitors, either for failure to deliver such prints to such other exhibitors in time for licensed exhibitions thereof or because the licensed right granted by the plaintiff distributor to such other exhibitors to prior exhibitions thereof in such place of locality has been violated by defendants' infringing exhibitions." (Paragraph 12.)

It is alleged that, by reason of the foregoing, and because by such prospective unauthorized and unlicensed exhibitions and performances the plaintiff will be injured and subjected to considerable expenditure of time, effort, and money for the purpose of detecting, following up, and prosecuting infringements which tend to the discouragement and destruction of the plaintiff's business, the plaintiff is without an adequate remedy at law. (Paragraphs 13 and 15.)

The bill of complaint alleges that as to numerous distinct photoplays each was exhibited on a day in addition to the day on which the defendant was licensed to exhibit the same (paragraph 21); and that the separate causes of action are joined for the sake of convenience, because the convenient administration of justice will be promoted by such joinder, and a multiplicity of separate actions against the defendant arising on similar sets of facts will be avoided (paragraph 14).

1. The first ground on which the motion to dismiss is based is, in substance, that the bill does not contain, as required by Rule 25 (28 USCA § 723), "a short and simple statement of the ultimate facts upon which the plaintiff asks relief, omitting any mere statement of evidence."

While at first blush the amended bill of complaint may appear somewhat longer than necessary, and conciseness may seem to yield rather too much to clearness, a study of the problems involved leads to the conclusion that vagueness and indefiniteness have been avoided without resorting to verbosity, needless repetition, or disregard of the other requirements of the rule.

2. The second ground alleged in the motion to dismiss is that the amended bill fails to allege any material facts not set forth in the original bill of complaint.

In view of what is to be stated later, it seems unnecessary now to do more than to point out the respect in which the amended bill of complaint differs from the original bill, as to which a motion to dismiss was heard in this court and later in the Circuit Court of Appeals.

Instead of referring to the plaintiff as the "sole and original author and proprietor of original, unpublished motion pictures," the amended bill of complaint refers to the plaintiff and the motion pictures as the "sole and original author and proprietor of original, unpublished motion picture photoplay films." The amended bill of complaint alleges that these motion picture photoplay films were the works for which copyrights were secured by publication in the manner provided by the statute, and contains the necessary allegation with respect to compliance with the copyright law as to deposit of two copies of these films and registration of claim to copyright under class L. (Paragraphs 3 and 4.)

In paragraph 5, the plaintiff also describes the process of originating the films, and defines the word "exhibition" as used

with reference to motion picture photoplay films. The plaintiff's brief states that this is to avoid any confusion resulting from the common usage of the term "exhibition" as applied to paintings, books, etc., in stores or galleries, as distinguished from the trade term of "exhibition" in connection with motion picture photoplay films. Paragraph 5 of the bill of complaint reads in part as follows: "Where the bill of complaint refers to exhibition of any of the aforesaid motion picture photoplay films, such reference shall be deemed to describe the process of rapidly passing one of the prints thereof at a specified rate of speed through an apparatus projecting light rays through such moving print by which there is cast upon a screen or other surface by such projected rays, enlarged reproductions of the images depicted upon such print, the rapidity and continuity of the change of the projected reproductions of the images creating for the beholder a dramatic performance or representation in pantomime upon the screen depicting and portraying a plot or sequence of incidents, situations, or events, with appropriate characters, in various settings, or acting forms, and which are wholly or partially fictional or imaginary in nature."

In paragraph 10 it is alleged that the plaintiff delivered and intrusted to the corporate defendant possession of duplicate copies or prints of its copyrighted motion picture photoplay films, by way of a license under their respective copyrights for the purpose of using the same for certain licensed exhibitions at the Bijou Theatre (one day only); that these film prints were based upon the original motion picture photoplay films for which the plaintiff had secured statutory copyrights, and were precise copies and duplicates thereof; that the defendants used these prints or copies for the purpose of projecting both the licensed exhibitions and the unlicensed exhibitions (on a second day). The tenth paragraph concludes: "That the said respective unauthorized exhibitions were exhibitions of motion picture photoplay film prints founded and based upon original works in which statutory copyrights subsisted as copyrighted motion picture photoplays, and were given without the agreement, license, permission, consent or authority of the plaintiff, the owner of the copyrights of the works in which the said respective copyrights subsisted and from which the said motion picture photoplay film prints thus unauthorizedly exhibited were made; that they therefore infringed upon the statutory copyrights subsisting in the said respective copyrighted motion picture photoplay films from which were made the said motion picture photoplay film prints thus unauthorizedly exhibited."

One reason for stating in detail the respects in which the amended bill of complaint differs from the original bill of complaint is that the plaintiff has argued the fear that, in connection with the motion to dismiss the original bill of complaint, the plaintiff having referred to photoplays and not to photoplay films as the copyrighted article, it may not have made clear to the court its position, and that such failure may have resulted in certain language in the opinion of the Circuit Court of Appeals which otherwise would not have appeared therein.

■ 3, 4, 5, and 6. The third, fourth, and sixth grounds on which the motion to dismiss is based are in substance that the amended bill of complaint fails to show that the copyrighted films are founded on copyrighted novels, dramas, scenarios, or other dramatic compositions; that it fails to allege that the motion picture photoplay films are founded upon copyrighted dramatic productions of which the plaintiff is the sole proprietor; and that it sets out only an unauthorized exhibition of a copyrighted motion picture founded upon an uncopyrighted novel, drama, or scenario.

It is true, as stated in these paragraphs of the motion to dismiss, that the amended bill of complaint fails to state that the copyrighted films are founded on "copyrighted novels, dramas, scenarios or other dramatic compositions," and fails to allege that the motion picture photoplays are founded upon copyrighted dramatic productions of which the plaintiff is the sole proprietor.

Instead of referring to the copyright owner as the "sole and original author and proprietor of original unpublished motion pictures," as was done in the original bill of complaint, the amended bill refers to the plaintiff and the motion pictures as the "sole and original author and proprietor of original unpublished motion picture photoplay films," and states that these motion picture photoplay films are the works for which copyrights were secured. The amended bill contains no allegations inconsistent with such photoplay films having been "founded upon an uncopyrighted novel, drama or scenario."

In connection with each of these grounds for dismissal, the defendants say that the amended bill should be dismissed, for the reason that the decision of the Circuit Court of Appeals requires such dismissal. These

are matters which can be treated conveniently with the fifth ground stated in the motion to dismiss, and reading: "5. The facts alleged in the amended bill fail to show any infringement of the plaintiff's copyright under the decision of the Circuit Court of Appeals."

The decision of the Circuit Court of Appeals upon the motion to dismiss the original bill of complaint is reported in 59 F.(2d) 70, 76. The original bill was drawn in such a way that the Circuit Court of Appeals was led to the conclusion that the plaintiff might have intended to allege that the copyrighted films were founded on copyrighted novels, dramas, scenarios, or other dramatic compositions. The opinion states:

"The bills of complaint do not allege that the copyrighted films are founded on copyrighted novels, dramas, scenarios, or other dramatic compositions. Neither do they say they are not. We are left in doubt. But the plaintiffs do allege in their bills of complaint that they are the copyright proprietors and the sole and original authors of the unpublished motion pictures upon which the actions are based. They also allege that they have the exclusive right to publish, copy, use, vend, produce, reproduce, perform, represent, and exhibit said works in any manner or by any method whatsoever.

"Of course the last sentence is only a conclusion of law. It is not admitted by the demurrers to the bills. * * *

"If, from the above-mentioned allegations in the bills, we are to infer that the photoplays are founded upon copyrighted dramatic productions of which the plaintiffs are the sole proprietors, the bills should be amended so that nothing be left to inference. * * *

"We hold that films which are founded upon copyrighted dramas or other dramatic compositions are protected under the provisions of section 1(d) of the Copyright Act [17 USCA § 1(d)] and their unlicensed exhibition is an infringement of the copyrighted dramatic composition.

"We are not called upon to decide whether the unlicensed exhibition of a motion picture other than a photoplay would constitute an infringement of the copyrighted film of such a picture. * * *

"The decree of the District Court [50 F.(2d) 908 (dismissing the bill)] in each case is set aside, and the cases are remanded with direction to allow either plaintiff to amend its bill. If, however, the plaintiff in either case does not elect to amend, the decree of the District Court in such case is affirmed with costs in this court. * * * "

The defendant argues that the Circuit Court of Appeals has indicated that, unless a "motion picture photoplay film" is founded on copyrighted novels, dramas, scenarios, or other dramatic compositions, or upon copyrighted dramatic productions of which the plaintiff is the sole proprietor, the plaintiff fails to show any infringement of its copyright. This is not the decision of the Circuit Court of Appeals, nor am I satisfied that by way of dictum the Circuit Court of Appeals has indicated that such would be its decision.

In Tiffany Productions, Inc., v. Dewing et al. (D. C.) 50 F.(2d) 911, it was decided that a moving picture photoplay is a " 'dramatic work' within Copyright Law (17 USCA §§ 1(d), 5)," and Judge Coleman said: "However, assuming without deciding that the exhibition here complained of was neither a 'publication' nor a 'copy' within the meaning of section 1(a) of the act, there would seem to be no escape from the conclusion that the plaintiffs are, nevertheless, entitled to invoke the protection of section 1(d), on the ground that a 'motion picture photo-play' is a 'dramatic work.' "

In the Tiffany Productions case, so far as appears, the motion picture photoplay was not founded upon copyrighted novels, dramas, scenarios, or other dramatic compositions. Referring to Judge Coleman's decision, the Circuit Court of Appeals said: "In the case of Tiffany Productions, Inc., v. Dewing et al. (D. C.) 50 F.(2d) 911, Judge Coleman, in a similar case, reached a conclusion contrary to that of the District Court in the instant case. His opinion is well considered and appeals to us. He held that the projection of a photoplay film on a screen without the copyright owner's permission was an infringement. His opinion is expressly limited to motion picture photoplays, and does not refer to motion pictures other than photoplays."

In Pathé Exchange, Inc., v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local No. 306, et al., 3 F. Supp. 63, decided December 5, 1932, in the District Court for the Southern District of New York, Judge Caffey said:

"A single affirmative defense is set up in both cases. In substance this is that 'none of the alleged copyrighted motion pictures' of the complainant are 'founded upon existing dramas or dramatizations of literary pro-

ductions in which copyrights subsist.' If it be good, then the bills on their face are without equity. If, as matter of law, a copyright owner of such articles as are involved be not entitled to the protection of the copyright statute against unauthorized performances except when its copyrights relate exclusively to copyrighted 'dramas or dramatizations of literary productions,' then no cause of action is stated in either bill.

"The precise issue, as above stated, presented by the defense has been previously raised by the defendants and has already been passed on by this court. The defendants moved to dismiss the bills, because of failure to state a cause of action, relying on Metro-Goldwyn-Mayer D. Corp. v. Bijou Theatre Co. (C. C. A.) 59 F.(2d) 70. The motions were fully argued and were denied. That ruling settles the law of the cases. It is binding on me and, if the cases were sent to trial before another judge, would bind him (Commercial Union of America v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937).

"That the previous determination was squarely on the merits, that the defendants rested on the identical proposition now advanced by them and that the conclusion was adverse to that proposition is manifest from the papers. Indeed, it is sufficiently shown by the memorandum alone of Judge Bondy under date of June 27, 1932, endorsed on the cover of the notice of motion in the first case and made applicable to the second case, as follows:

" 'The amended bill of complaint complies with the requirement that facts be alleged showing performance of conditions precedent to a copyright. For the reasons fully discussed in Tiffany Productions, Inc., v. Dewing (D. C.) 50 F.(2d) 911, Cf. Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co., 59 F.(2d) 70, decided April 7, 1932, Cir. Ct. of Appeals for the First Dist., the motion is denied.' "

Under the circumstances, the opinion of the Circuit Court of Appeals upon the motion to dismiss the original bill of complaint is not conclusive as to the disposition which should be made of the present motion to dismiss the amended bill of complaint.

By article 1, § 8, cl. 8, of the Constitution, Congress is empowered to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries. The word "writings"

as here used has been interpreted liberally, and the clause itself has been held to confer upon Congress the right to protect authors of maps, charts, designs, engravings, cuts, and other prints, as well as photographs. Burrow-Giles Lithographic Company v. Sarony, 111 U. S. 53, 4 S. Ct. 279, 28 L. Ed. 349.

Pursuant to the power granted it, Congress passed various acts granting relief to authors, including the Acts of May 31, 1790 (1 Stat. 124), of April 29, 1802 (2 Stat. 171), Feb. 3, 1831 (4 Stat. 436), the Act of August 18, 1856 (18 Stat. 138), extending protection to performing and exhibition rights in addition to the "copy" right with respect to dramatic compositions, and the Act of January 6, 1897 (29 Stat. 481), granting additional protection against public performance of musical compositions.

Referring to this legislation, President Roosevelt, in his message to Congress of December, 1905, said: "Our copyright laws urgently need revision. They are imperfect in definition, confused and inconsistent in expression; they omit provision for many articles which, under modern reproductive processes, are entitled to protection; they impose hardships upon the copyright proprietor which are not essential to the fair protection of the public; they are difficult for the Courts to interpret and impossible for the Copyright Office to administer with satisfaction to the public. * * * A complete revision of them is essential."

Judicial notice may be taken of the fact that prior to this time the motion picture had proved its economic possibilities. Shortly after the year 1888, Edison constructed a camera by which he was enabled to secure many pictures per second on a continuous strip of celluloid film invented by Eastman, on which he secured a patent as early as the year 1902. In this year a theater exclusively devoted to the exhibition of motion pictures was opened in Los Angeles. The motion picture industry went through a period of rapid development during the years 1906 to 1909. In 1907 hundreds of thousands of persons daily attended exhibitions at thousands of theaters. During these years such trade publications as "Views and Films Index," "Moving Picture News," "Moving Picture World," and "Motography" were published. As early as 1905 the commonwealth of Massachusetts began making laws affecting the use of motion picture machines (St. 1905, c. 176; St. 1908, c. 565), while, according to the March 14, 1908,

issue of the "Moving Picture World," a Motion Picture Operators' Union was organized in the city of Boston in December, 1907.

It is clear that motion pictures were commercially known prior to the year 1909, but, if this were not so, it would seem that the Copyright Act passed in that year (17 USCA § 1 et seq.) might well be regarded as affording protection to motion picture films. In Buck v. Jewell-LaSalle Realty Company, 283 U. S. 191, 51 S. Ct. 410, 411, 75 L. Ed. 971, 76 A. L. R. 1266, the Supreme Court extended protection not only to radio broadcasting but to unlicensed radio reception of broadcast compositions received on a master radio receiving set by a hotel and wired to its public and private rooms. It was urged on behalf of the defendant that the possibility of "multiple performance by single rendition" was completely uncontemplated at the time of the enactment of the Copyright Act, and Mr. Justice Brandeis said: "Although the art of radio broadcasting was unknown at the time the Copyright Act of 1909 was passed, and the means of transmission and reception now employed are wholly unlike any then in use, it is not denied that such broadcasting may be within the scope of the act. Compare Kalem Co. v. Harper Bros., 222 U. S. 55, 32 S. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285; Gambart v. Ball, 14 C. B. (N. S.) 306, 319. * * * While this [multiple performance] may not have been possible before the development of radio broadcasting, the novelty of the means used does not lessen the duty of the courts to give full protection to the monopoly of public performance for profit which Congress has secured to the composer."

The question whether the bill of complaint shows an infringement of the plaintiff's copyright must be resolved in favor of the defendant, unless motion picture photoplay films are entitled to protection under the Act of March 4, 1909, as amended by the Act of August 24, 1912 (17 USCA §§ 5, 11, 25), prior to which latter date motion pictures were registered for copyright as "photographs," whereas thereafter they were registered under class L as "motion picture photoplays" and under class M as "motion pictures other than photoplays."

The pertinent provisions of the Copyright Law follow:

"Section 1. *Exclusive Rights as to Copyrighted Works.* Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

"(a) To print, reprint, publish, copy, and vend the copyrighted work;

"(b) To translate the copyrighted work into other languages or dialects, or make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work; to convert it into a novel or other nondramatic work if it be a drama; to arrange or adapt it if it be a musical work; to complete, execute, and finish it if it be a model or design for a work of art; * * *

"(d) To perform or represent the copyrighted work publicly if it be a drama, or, if it be a dramatic work and not reproduced in copies for sale, to vend any manuscript or any record whatsoever thereof; to make or to procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, performed, represented, produced, or reproduced; and to exhibit, perform, represent, produce, or reproduce it in any manner or by any method whatsoever." 17 USCA § 1(a, b, d).

"§ 4. *All Writings of Author Included.* The works for which copyright may be secured under this title shall include all the writings of an author." 17 USCA § 4.

"§ 5. *Classification of Works for Registration.* The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs: * * *

"(d) Dramatic or dramatico-musical compositions; * * *

"(l) Motion-picture photoplays;

"(m) Motion pictures other than photoplays.

"The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title." 17 USCA § 5(d, l, m).

Motion pictures were subject to copyright by virtue of section 4, supra, as within the constitutional limitation of "writings," and they were copyrightable and copyrighted under prior acts passed before they were invented. Buck v. Jewell-LaSalle Realty Company, supra. See, also, Jerome H. Remick & Co. v. American Auto. Accessories Company (C. C. A.) 5 F.(2d) 411, 40 A. L. R. 1511, where the court says: "While statutes should not be stretched to apply to new situations not fairly within their scope, they should not be so narrowly construed as to

permit their evasion because of changing habits due to new inventions and discoveries."

Section 5, supra, by its very terms is a nonexclusive definition of works subject to copyright; refers to a classification made for the convenience of the Patent Office; and is merely administrative. See House Report No. 2222, reporting to the 60th Congress, Second Session, relating to the Copyright Act of 1909, p. 1; Tiffany Productions, Inc., v. Dewing et al., supra (D. C.) at page 914 of 50 F.(2d); Weil's "American Copyright Law," p. 200.

■ Motion picture photoplay films are either dramatic works entitled to protection under subdivision (d) of section 1, supra, whose unauthorized performance is an infringement of the performing rights given to dramatic works, or they are nondramatic works entitled to protection under subdivision (b). It would seem that they are the former. The decision in Tiffany Productions, Inc., v. Dewing et al., supra, which the Circuit Court of Appeals commends, decides that motion picture photoplay films are dramatic works entitled to protection under subdivision (d). If they are not dramatic works, the exhibition of the photoplays by the defendant constitutes a dramatization of a nondramatic work, and constitutes an infringement of the rights secured by subdivision (b), supra. This subdivision secures the exclusive right "to dramatize it [the copyrighted work] if it be a nondramatic work."

In Kalem Company v. Harper Bros., supra, it appeared that the Kalem Company had made a scenario based on the novel "Ben Hur" (the copyright of which was owned by Harper Bros.), which it proceeded to enact into a motion picture, portraying various scenes from the novel. The Kalem Company did not exhibit the film, but advertised and distributed it to numerous theaters for the purpose of exhibitions. The Kalem Company was held liable as a contributory infringer on the theory that the exhibitions had infringed upon the exclusive rights of the copyright owner of the novel to dramatize his novel. The Kalem Company was not held liable for infringement because it manufactured the film, but because infringement had taken place in numerous theaters by "exhibition," with respect to which "exhibitions" it was a contributory infringer.

Upon the authority of this case, the plaintiff is entitled to protection against an unauthorized exhibition, either because the moving picture photoplay film constituted a dramatic work, or because the unlicensed exhibition constituted a dramatization of a nondramatic work.

The plaintiff also contends that the exhibition of a motion picture film upon a screen violates another species of right inherent in every copyright, regardless of its nature; namely, the exclusive right of duplication. It is suggested that the important fact would be whether there had been a duplication upon the screen of what appeared on the copyrighted strip of film, within the meaning of the Copyright Act.

The plaintiff says, in substance, that a motion picture exhibition involves the production upon the screen of a duplication of everything that appears upon the copyrighted film, and that this exclusive duplication right conferred by subdivision (a) of section 1, supra, is violated. According to the plaintiff:

"The determination of this question involves an analysis of what happens when a motion picture is exhibited, in the light of the spirit and intent underlying the exclusive 'duplication' right under the Copyright Act.

"When the motion picture film is run through the projecting apparatus, a duplicate of every image on the strip of film is projected upon the screen. Visually, there is a precise similarity in every detail. Stop the film in the projecting machine at any point and the projected 'still' on the screen will be precisely identical, although enlarged, with the image on the film. Any one will identify it as an exact 'copy.' If the rays were projected through the film upon another piece of chemically sensitized celluloid, so that their actinic effect upon the chemicals would result in fixing permanently the projected images, we would have a 'duped' print, which is a copy. Its size can similarly be enlarged or decreased at will. In fact, ordinary commercial film which is 35 mm. in width is reduced to 16 mm. in width for amateur projection in homes. Clearly, a duplication of this nature, despite change in size, would be infringement, under the duplication right of subdivision (a). Our question is whether there is any essential difference in principle, within the meaning of subdivision (a), when a copy or a duplicate of the same film is projected upon a screen where the images will not be permanently fixed.
* * * "

While the foregoing quotation is not a a complete statement of the plaintiff's argument with reference to the matter of du-

74

plication, it seems sufficient to indicate in a general way its position as to this aspect of the case. The Circuit Court of Appeals did not deal with this question. In Tiffany Productions, Inc., v. Dewing et al., supra, Judge Coleman indicated the view that this theory might not stand too close scrutiny in the light of the decision of the United States Supreme Court in the pianola roll case, White-Smith Music ·Company v. Apollo Company, 209 U. S. 1, 28 S. Ct. 319, 321, 52 L. Ed. 655, 14 Ann. Cas. 628.

This action, decided in 1908, held that playing an instrument with a perforated sheet forming a part of the mechanism which produces music could not be regarded as the copying of the sheet music for which a copyright had been obtained. The court said: "The plaintiffs' rights are not infringed except by an unauthorized copy of their 'sheets of music.' * * * The only question we have to consider is whether the defendants have copied the plaintiffs' sheets of music. The defendants have taken those sheets of music and have prepared from them sheets of paper with perforations in them, and these perforated sheets, when put into and used with properly constructed machines or instruments, will produce or enable the machines or instruments to produce the music indicated on the plaintiffs' sheets."

It may well be doubted whether the White-Smith case requires the conclusion that in the case at bar the plaintiff's exclusive right of "duplication" has not been violated. However this may be, the amended bill of complaint shows an infringement of the copyrights subsisting in the plaintiff's copyrighted films.

7. The next ground on which the motion to dismiss the amended bill of complaint is founded reads: "The plaintiff is precluded from maintaining this action for infringement because of the contract which it made with the defendant, copy of which is annexed to and made part of the amended bill of complaint."

The defendant was given a license to exhibit the films on one day, and an exhibition on that day, of course, gave rise to no action for an invasion of the plaintiff's copyright. When the defendants had exercised the license, it was exhausted, and the alleged exhibition on an additional ·day constituted both a breach of the contract and a trespass upon the monopoly conferred upon the plaintiff by the copyright. The Circuit Court of Appeals makes it entirely clear that the bill of complaint is not demurrable by reason of

anything appearing in the contracts. In a trial on the merits, the contracts may be important. The plaintiff had an' election of remedies. If in either of the cases the plaintiff elected the remedy afforded under the contracts, which provide against exhibitions on other than the licensed dates, he thereby lost his right to pursue his remedy as for infringement of the copyright. It is not within my province to attempt to state at this time what conduct may be conclusive of an election to proceed as for breach of contract, or what conduct may raise an issue of fact as to whether an election has been made. While the amended bill of complaint shows the existence and the terms of the contracts, it does not show that as a matter of law the plaintiff has elected the contract remedy, and the motion to dismiss cannot be sustained on the seventh ground stated therein.

8. The foregoing disposes also of the eighth ground for dismissal, that the plaintiff has an adequate remedy under the contract. The plaintiff had a choice of remedies, and, while pursuit of one of the remedies might preclude later pursuit of the other, neither the mere creation of the contract right, nor anything which the bill discloses as having been done by way of enforcement of that right, warrants the conclusion that, as a matter of law, the plaintiff's copyright remedy is gone.

9. The last ground for dismissal is that the amended bill of complaint fails to allege that the films are now in the possession of the defendants or to show any other ground for equitable relief.

As to a similar contention in connection with the original bill of complaint, Judge Morton said: "The third ground is that no case is shown for an injunction because there is no allegation of continued or threatened infringement and that, there being no case for injunctive relief, the equity of the bill fails. The answer to this is found in the statute (17 USCA § 25), which provides that a suit for damages may be combined with one for an injunction. It follows that though the injunction be denied the case may stand as one for damages." Metro-Goldwyn-Mayer Distributing Corporation v. Bijou Theatre Company (D. C.) 50 F.(2d) 908, at page 909.

The defendants took no exception to this ruling, and accordingly the Circuit Court of Appeals stated simply that the District Court disposed of this ground for dismissal by "ruling that the actions could be maintained even though no ground for injunctive relief

is found to exist." 59 F.(2d) 70, at page 71. Under the circumstances, it is unnecessary to decide whether the averments are sufficient ultimately to warrant an injunction.

In each case the motion to dismiss the amended bill of complaint is denied.